<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERRENCE CORBETT,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEVES,<br><br>    Defendant. | No. 23cv1359 (EP) (JSA)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Terrence Corbett, a pre-trial detainee in Hudson County Jail, New Jersey, initiated this action against Director B. Scott and Officer Neves[1], Hudson County Jail Employees, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. D.E. 1 ("Complaint"). The Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed the claim against Defendant Scott *with prejudice*. Plaintiff now moves for default judgment against Defendant Neves pursuant to Fed. R. Civ. P. 55(b)(2). D.E. 10 ("Motion" or "Mot."). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **DENY** Plaintiff's Motion.

**I.    BACKGROUND[2]**

This case stems from a fight between Plaintiff and another detainee, Lopez.[3] Compl. at 6-7. Officer Neves approached Plaintiff on January 30, 2023 and asked about Lopez's injury. *Id.* at

---

[1] Plaintiff does not include Neves's full name in any filing. *See* Dkt.
[2] Following the entry of default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Therefore, the facts are based on well-pled allegations in the Complaint.
[3] Plaintiff also does not include Lopez's full name in any filing. *See* Dkt.

5. According to Officer Neves, Lopez told Officer Neves not to worry about the mark on his eye. *Id.* Officer Neves then asked Plaintiff about bruising on Plaintiff's face. *Id.* at 6. Plaintiff told Officer Neves he was "good but not that good" and that there was nothing on Plaintiff's face. *Id.* Officer Neves asked Plaintiff if he knew who had injured Lopez, but Plaintiff refused to say anything and walked away. *Id.*

Shortly thereafter, another detainee approached Plaintiff and asked him if he discussed Lopez with Officer Neves. *Id.* Plaintiff responded that Officer Neves claimed that Lopez told him about the fight, which Lopez denied. *Id.* Later that evening, Lopez confronted Plaintiff, saying that Officer Neves told him that Plaintiff did discuss the fight with Officer Neves. *Id.* Plaintiff and Lopez summoned Officer Neves over to ask for clarification. *Id.* at 6-7.

Officer Neves stated that when he asked Plaintiff if he fought with Lopez, Plaintiff "said no and smiled." *Id.* at 7. Plaintiff vehemently denied this version of events, but Lopez and his friends "start[ed] yelling and threatening [Plaintiff] saying you out here you rat." *Id.* Officer Neves then loudly said "y'all know [there's] a lot of rats on this unit and they tell everything. . ." *Id.* Plaintiff states a fight then broke out between one of his friends and one of Lopez's friends because Lopez believed Plaintiff "ratted him" out to Officer Neves. *Id.*

Plaintiff broke up the fight and Officer Neves ran over and pepper-sprayed the group. *Id.* at 8. Officer Neves called a Code Yellow, which caused a lockdown of the unit and all staff to come over. *Id.* The detainees were treated for their exposure to pepper spray and sent back to their cells. *Id.*

The next morning, another detainee told Plaintiff that Lopez was planning to stab him because of the implication that Plaintiff snitched. *Id.* Plaintiff tried to resolve the situation, but Lopez pulled a weapon out. *Id.* Plaintiff started punching Lopez, Lopez fled, and then Plaintiff

2

pursued and fought Lopez until staff arrived to break up the fight. *Id.* The Complaint does not specify what force was used to break up the fight or what Officer Neves's role was. Plaintiff slipped on a pepper spray can during the fight, causing him to "punch the floor" and injure his thumb. *Id.* at 8-9. Plaintiff needed surgery and two pins were put into his hand. *Id.* at 9. Plaintiff wrote to Director Scott to relay the events and stated that Officer Neves "need[s] to be terminated before he get[s] someone killed or kills someone [sic] he lie to start trouble . . . ." *Id.*

## II.     PROCEDURAL HISTORY

This Court previously screened Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2). D.E. 4. The Court dismissed the claims against Director Scott *with prejudice* but proceeded the failure-to-protect claim against Officer Neves, *id.* at 5, in part because "Courts in the Third Circuit have recognized that being labeled a 'snitch' may constitute an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate." *Williams v. Thomas,* No. 12-1323, 2013 WL 1795578, at *5 (E.D. Pa. Apr. 29, 2013) (collecting cases).

The Court then ordered the Clerk to provide Plaintiff with a copy of the USM-285 form so that the U.S. Marshals Service could effectuate service upon Officer Neves. D.E. 5. On February 27, 2024, the U.S. Marshals Service returned "executed" Summons on Officer Neves. D.E. 8 ("Service Cert."). After Officer Neves did not timely respond, on December 29, 2024, Plaintiff filed a request for entry of default, D.E. 9, which the Clerk entered on January 2, 2025. The Motion, also dated December 29, 2024, followed, which requested both entry of default and default judgment. Mot.

### III. LEGAL STANDARD

Courts may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who does not file a timely responsive pleading. *Chanel, Inc. v. Gordashevsky*, 558 F. Supp 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Although cases should be decided on their merits where practicable, default judgment is "largely a matter of judicial discretion." *Id.* Courts accept the well-pleaded factual allegations in the complaint as true but "need not accept the moving party's legal conclusions or allegations relating to the amount of damages," and must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* at 535-36 (internal citations omitted).

Courts must determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683 (D.N.J. 2018) (quoting *Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012)).

### IV. ANALYSIS

The Court first notes that the substantive extent of Plaintiff's motion consists of expressions of his (understandable) frustration with the length of this case without any appearance from Defendant Neves. Mot. at 1. He outlines the timeline of the case, including when Defendant Neves was purportedly served. *Id.* Plaintiff makes no substantive legal arguments, and a motion that contains no legal argument or that is unaccompanied by a brief or statement that no brief is necessary violates Local Civil Rule 7.1(d) "and may be denied on that basis alone." *Roy v. Ramsey*

4

*Moving Sys.*, No. 15-3330, 2016 WL 1163932, at *4 n.2 (D.N.J. Mar. 23, 2016). Plaintiff fails to do so, and the Court could (but will not) deny the Motion on this basis.

In determining the propriety of default judgment, courts must first determine whether service is proper. *Matos*, 133 F. Supp. 3d at 683. Fed. R. Civ. P. 4(e) sets forth how to properly serve individuals:

> [A]n individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

The U.S. Marshals Service certified that it effectuated service by delivery to "Sgt Arti[c] Brown"[4] on February 26, 2024. Service Cert. Officer Neves was therefore not personally served. *Id.* Additionally, as best the Court can tell, service upon "Sgt Arti[c] Brown" does not satisfy Fed. R. Civ. P. 4(e)(2)(C). *Id.* There is no indication that the individual was authorized to receive service of process on Officer Neves's behalf. Fed. R. Civ. P. 4(e)(2)(C).

The Court is sympathetic to the fact that Plaintiff is *pro se* and has relied on the U.S. Marshals Service to effectuate service. However, particularly as Officer Neves's first name is lacking from the filings, the Court cannot conclude that service was proper at this time and must **DENY** the Motion ***without prejudice.*** Plaintiff may submit a new USM-285 form with Officer Neves's full name and then Plaintiff may renew efforts to seek default judgment against Officer Neves should he continue to fail to appear in this action.

---

[4] The Court cannot ascertain the spelling of the individual served due to illegible handwriting.

5

V.  CONCLUSION

For the above reasons, the Court will **DENY** Plaintiff's Motion, D.E. 10.  An appropriate Order follows.

Dated: April 15, 2025

*Evelyn Padin*
Evelyn Padin, U.S.D.J.

6